UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VICTOR ROSARIO,

                Petitioner,

-against-

THOMAS DECKER, as Field Office Director, New York City Field Office, U.S. Immigration & Customs Enforcement, ALEJANDRO MAYORKAS, as Acting Secretary, U.S. Department of Homeland Security, MERRICK GARLAND, as Attorney General, U.S. Department of Justice,

                Respondents.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/20/2021
```

21 Civ. 4815 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Petitioner, Victor Rosario, has been detained by U.S. Immigration and Customs Enforcement ("ICE") since August 12, 2020. He seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241, ordering Respondents, Thomas Decker, ICE Field Office Director for the New York City Field Office, Alejandro Mayorkas, Acting Secretary of Homeland Security, and Merrick Garland, United States Attorney General, to afford him an individualized bond hearing and to release him immediately. For the reasons stated below, Rosario's petition is GRANTED in part and DENIED in part.

## BACKGROUND

    Rosario is a 37-year-old citizen of the Dominican Republic. Petition ¶ 22, ECF No. 1. Rosario entered the United States on September 6, 1986, near Brownsville, Texas. Pujol Decl. ¶ 4, ECF No. 13. On September 2, 2016, he was apprehended by the U.S. Border Patrol ("USBP"). *Id.* ¶ 5. The USBP processed Rosario as an "expedited removal," but before he was removed, Rosario claimed that he was afraid to return to the Dominican Republic, and was referred to the U.S. Citizenship and Immigration Services ("USCIS"). *Id.* The USCIS

established that Rosario had a credible fear of removal and directed him to appear pursuant to § 212(a)(7)(A)(i)(I) of the Immigration Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I). *Id.* Rosario was then placed in removal proceedings at an immigration court in Miami, Florida. *Id.* ¶ 6; Petition ¶ 23. On October 3, 2016, at the removal proceedings, Rosario was granted bond by an immigration judge. Petition ¶ 23. After paying the bond, he moved to his aunt's home in the Bronx, and his proceedings were transferred to the Federal Plaza Immigration Court in Manhattan, where he was scheduled for a hearing on June 6, 2017. Petition ¶¶ 23, 25.

In May 2017, Rosario was arrested in the Bronx and charged by a grand jury in this district with distribution and possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A). Petition ¶ 24; Resp. Mem. at 3, ECF No. 14; Pujol Decl. ¶ 8. Because Rosario was in federal custody, he was unable to attend the June 6, 2017 hearing at the Federal Plaza Immigration Court. Petition ¶ 25. At that hearing, Immigration Judge Alan Vomacka ordered Rosario removed *in absentia*. *Id.* On August 11, 2020, Rosario was sentenced in the criminal proceeding and transferred to Bergen County Jail under the custody of ICE. *Id.* On August 28, 2020, Assistant Chief Immigration Judge Khalilah Taylor granted Rosario's motion to rescind the *in absentia* removal order and reopen the proceedings. *Id.*

On November 19, 2020, Rosario submitted applications for deferral of removal under the Convention Against Torture. *Id.* ¶ 26. Immigration Judge Dara Reid set a hearing for December 30, 2020, which was rescheduled to February 3, 2021, for administrative reasons. *Id.* ¶ 27. By this time, Rosario had contracted and continued to test positive for COVID-19 and remained in a quarantine unit at the Bergen County Jail. *Id.* ¶ 28. The hearing was adjourned to February 10, 2021, because Rosario could not access video conferencing equipment in the quarantine unit. *Id.*

2

On February 10, 2021, Judge Reid held an "individual hearing" via telephone because Rosario remained quarantined. *Id.* ¶¶ 27–29. After approximately four hours of testimony from Rosario, Judge Reid granted the deferral of removal under the Convention Against Torture. *Id.* The Department of Homeland Security appealed the decision to the Board of Immigration Appeals. *Id.* ¶ 30. Rosario is detained at the Orange County Correctional Facility pending the outcome of the appeal. *Id.* ¶¶ 18, 31.

Rosario has been detained for over eleven months in a county jail where he is locked in a small cell for approximately sixteen hours each day. *Id.* ¶ 32. He has been separated from his loved ones, including his grandmother who requires daily care due to her dementia. *Id.* Additionally, he has been diagnosed with post-traumatic stress disorder, sleep disturbances, hallucinations, and depression. *Id.* ¶ 33. On May 30, 2021, Rosario filed this petition under 28 U.S.C. § 2441 asking the Court to provide him with a bond hearing and to grant his immediate release. *Id.*

## DISCUSSION

I. <u>Legal Standard</u>

Section 236(c) of the INA, 8 U.S.C. § 1226, regulates the detention of undocumented individuals who are facing removal due to past criminal convictions. Generally, immigration detention is governed by § 1226(a), which provides for individualized review of detention decisions. Undocumented individuals detained pursuant to § 1226(a) may be released on bond or conditional parole while their immigration case is resolved.

The mandatory detention provision, § 1226(c), carves out an exception to the general framework set forth in § 1226(a). *See* § 1226(a). Under this exception, undocumented individuals who have committed one or more predicate crimes, including "a violation of . . . any

law . . . relating to a controlled substance," 8 U.S.C. § 1182(a)(2)(A)(i)(II), are to be detained by the Attorney General "when . . . released" from criminal custody, 8 U.S.C. § 1226(c)(1). In contrast to § 1226(a), immigration authorities do not have the option to provide undocumented individuals with a bond hearing under § 1226(c). Respondents contend that Rosario is subject to mandatory detention under 8 U.S.C. § 1226(c). Resp. Mem. at 1, 2.

To determine whether a detention has become unreasonable or unjustified, courts consider several factors, "including (1) the length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (5) whether the detention facility is meaningfully different from a penal institution for criminal detention; (6) the nature of the crimes committed by the petitioner; and (7) whether the petitioner's detention is near conclusion." *Gonzalez Evangelista v. Decker*, No. 20 Civ. 8758, 2021 WL 101201, at *3 (S.D.N.Y. Jan. 12, 2021).

II. Application

Rosario advances two arguments in support of his petition. First, he contends that his continued detention without a bond hearing violates due process. Rosario argues that he is entitled to a bond hearing where Respondents bear the burden of proof to show, by clear and convincing evidence, that he is a flight risk or a danger to the community. Pet. Reply at 1, 7, 10, ECF No. 15. Second, he contends that he should be immediately released pending adjudication of his petition due to his extraordinary circumstances.

A. Due Process

Rosario argues that his continued detention without a bond hearing violates due process on the following grounds: (1) Respondent's detention authority under § 1226(c) should be

limited to a sixth-month period; (2) Rosario's detention of more than 10.5 months has become unreasonably prolonged; (3) he has already been granted relief by the immigration court and should no longer have to be jailed in a criminal detention facility; (4) his detention is indistinguishable from criminal incarceration; and (5) his detention seems infinite since the proceedings could go on for months, if not years.  Petition ¶¶ 56–62.  Rosario contends that taken together, the individual factors in his case demonstrate the unreasonableness of his continued detention and require either a constitutionally adequate bond hearing or immediate release.  *Id.* ¶ 64.

Respondents argue that mandatory detention under § 1226(c) during removal proceedings continues to serve the "purported immigration purpose" of the statute, namely, ensuring the undocumented individual's appearance and protecting the community.  Resp. Mem. at 12 (quoting *Demore v. Kim*, 538 U.S. 510, 527 (2003)).  They contend that due process does not require a bond hearing "simply because detention under § 1226(c) has exceeded six months." *Id.* at 8.  Respondents further argue that the length of Rosario's detention is a function of the process he is being provided, such that he "may not rely on the extra time resulting [from his pursuit of legal remedies] to claim that his prolonged detention violates substantive due process."  Resp. Mem. at 16 (citing *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991)).  In other words, Respondents contend that the length of Rosario's detention is attributable to his various applications, including motion practice and requests for adjournments.  *See* Resp. Mem. at 16–17.

Rosario's detention raises serious constitutional concerns.  ICE has detained Rosario for over eleven months.  Petition ¶ 2.  Courts have held that the continued detention of non-citizens without an individualized bond hearing in circumstances similar to Rosario's violates the Due

Process Clause.  *See, e.g.*, *Joseph v. Decker*, No. 18 Civ. 2640, 2018 WL 6075067, at *11 (S.D.N.Y. Nov. 21, 2018) ("[Petitioner] has been detained for over 14 months and expects to be detained for many more [pending resolution of the Government's appeal], despite an immigration judge's ruling in his favor on the merits in July.  This is well beyond . . . the 6-month timeframe that has generally served as the constitutionality reference point[.]").  Respondents, and the circumstances of the ongoing pandemic, both contributed to the length of his detention.  The proceedings were first delayed by the immigration court, which rescheduled his hearing.  Pet. Reply at 4.  Subsequently, while waiting for his next court date, Rosario contracted COVID-19 and was quarantined in a cell where Respondents failed to provide him access to video conferencing equipment necessary to allow him to appear at the February 3, 2021 hearing.  *Id.*  Although Rosario's motion practice also prolonged his detention, the Court shall not penalize Rosario for raising and investigating non-frivolous claims.

Rosario has also successfully asserted defenses to his removal—Judge Reid granted Rosario's petition to defer his removal.  Petition ¶ 29.  Because Rosario remains detained pending resolution of the Government's appeal of that order, his detention is not near a conclusion.  *Id.* ¶¶ 22, 30–31.  Rosario has also spent the entirety of his detention in two county jails, the Bergen County Jail and the Orange County Correctional Facility, which are not meaningfully different from criminal detention centers.  *Cabral v. Decker*, 331 F. Supp. 3d 255, 262 (S.D.N.Y. 2018) (petitioner held at the Bergen County Jail); *Hylton v. Decker*, 502 F. Supp. 3d 848, 854 (S.D.N.Y. 2020) (petitioner detained at the Orange County Jail).  Moreover, Rosario suffers from mental illness, faces a threat of torture if forced to return to the Dominican Republic, and has endured this pandemic in isolation, separated from his family.  Petition ¶¶ 32–34, 60.  He has every incentive to continue to pursue his available defenses to deportation

in order to remain in the United States where he has lived for the past 34 years. These factors, taken together, especially the relief granted by Judge Reid, raise due process concerns.

Rosario's mandatory detention without a bond hearing violates due process in light of his particular circumstances.[1] Accordingly, Rosario's request for an individualized bond hearing is GRANTED.

### B. Procedural Requirements for a Bond Hearing

Rosario argues that he is entitled to release or to a bond hearing where Respondents bear the burden of proving "by clear and convincing evidence" that he is a flight risk or danger to the community. Petition ¶ 50 (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)); *see also Joseph v. Decker*, No. 18 Civ. 2640, 2018 WL 6075067, at *12 (S.D.N.Y. Nov. 21, 2018).

The Due Process Clause forbids the government from "depriv[ing]" any "person . . . of . . . liberty . . . without due process of law." U.S. Const. amend. V. The Supreme Court has stressed that "[f]reedom from imprisonment[—]from government custody, detention, or other forms of physical restraint[—]lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

In 2015, the Second Circuit, held that an individualized bond hearing pursuant to § 1226(c) required that "the government establish[] by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community." *Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015). The Supreme Court vacated *Lora* in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), after concluding that the Ninth Circuit case *Lora* relied on erred in applying the cannon of constitutional avoidance to § 1226(c). *Id.* at 846. In *Jennings*, the Supreme Court

---

[1] Having decided Rosario's request based on his as-applied challenge, the Court need not reach Rosario's second argument that due process requires that all noncitizens detained under § 1226(c) receive an individualized bond hearing when their detention exceeds six months. *See* Petition ¶ 57.

7

held "that § 1226 itself does not require the [G]overnment to carry the clear and convincing evidence burden . . . However, the Supreme Court left open the question of what the Constitution requires for aliens detained pursuant to § 1226(c)." *Cabral v. Decker*, 331 F. Supp. 3d 255, 266 n.6 (S.D.N.Y. 2018) (citing *Jennings*, 138 S. Ct. at 847, 851).

Courts in this Circuit have concluded that "when a court determines the length of a petitioner's detention pursuant to § 1226(c) is unjustified, due process requires that he be given a bond hearing where an individualized determination can be made as to whether he should remain confined for the duration of his immigration proceedings." *Constant v. Barr*, No. 19 Civ. 182, 2019 WL 4254078, at *8 (W.D.N.Y. Sept. 9, 2019) (collecting cases).

Respondents contend that placing the burden on the Government in a §1226(c) case is "especially inappropriate within the context of criminal aliens who Congress categorically decided were ineligible for bond consideration[.]" Resp. Mem. at 20. They further argue that "[r]equiring the [G]overnment to bear that burden would run contrary to the statutory scheme and defeat Congress's purposes[.]" *Id.* at 20–21. However, no such result would obtain because courts have concluded that placing the burden on an undocumented individual at a § 1226(a) bond hearing also violates due process. *See Velasco Lopez v. Decker*, 978 F.3d 842, 856 (2d Cir. 2020) ("We therefore conclude that the district court's order requiring the Government to prove that [the petitioner] is a danger to the community or a flight risk by clear and convincing evidence to justify his continued detention 'strikes a fair balance between the rights of the individual and the legitimate concerns of the state.'" (quoting *Addington v. Texas*, 441 U.S. 418, 427 (1979))); *Hylton*, 502 F. Supp. 3d at 856 (extending *Velasco Lopez* to § 1226(c) context because "the clear and convincing evidence standard is appropriate given that the Supreme Court

has consistently held the Government to a standard of proof higher than a preponderance of the evidence where liberty is at stake." (quotation marks and citation omitted)).

Accordingly, because the Court holds that the length of Rosario's detention pursuant to § 1226(c) is unreasonable, Respondents must provide Rosario with a bond hearing where Respondents bear the burden of proof, by clear and convincing evidence.

### C. Release

Federal courts have "inherent authority to admit to bail petitioners in immigration cases." *S.N.C. v. Sessions*, No. 18 Civ. 7680, 2018 WL 6175902, at *6 (S.D.N.Y. Nov. 6, 2018) (quoting *Elkimya v. Dep't of Homeland Sec.*, 484 F.3d 151, 153 (2d Cir. 2007)). When assessing a petitioner's qualification for bail, courts consider (1) "whether the petition raises substantial claims," and (2) "whether extraordinary circumstances exist[] that make the grant of bail necessary[.]" *Elkimya*, 484 F.3d at 154 (quotation marks omitted).

As stated above, Rosario's petition raises substantial claims. § II.A. But, the Court rejects Rosario's argument that "extraordinary circumstances" warrant immediate release. *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001). Rosario's reliance on *S.N.C.* is unpersuasive. 2018 WL 6175902; Petition ¶ 69. In *S.N.C.*, the petitioner, like Rosario, suffered from post-traumatic stress disorder. 2018 WL 6175902, at *6. However, the *S.N.C.* petitioner was also removed from caring for her eight children, the youngest whom she was still nursing, and detention aggravated her mental and physical condition. *Id.* Here, Rosario's medical records do not indicate that his condition is deteriorating. Instead, his records indicate that he is "feeling well and stable on his current medication regimen." Kaye Decl. ¶¶ 11–19, ECF No. 10; 6/18/2021 Behavioral Health Psychiatric Provider Follow Up Note, ECF No. 10 at 27.

To the extent that Rosario argues that COVID-19 presents an extraordinary circumstance warranting release, Petition ¶ 68, this argument is unavailing. Because Rosario has contracted, and apparently recovered from, COVID-19, the coronavirus does not present an extraordinary circumstance. *Id.* ¶¶ 27–28; *see Sicap v. Decker*, No. 20 Civ. 02638, 2020 WL 5440591, at *3 (S.D.N.Y. Sept. 9, 2020) (declining to find extraordinary circumstances where the petitioner was not "'high risk' or particularly susceptible to serious harm if exposed to COVID-19").

Accordingly, that portion of Rosario's petition which seeks immediate release is DENIED.

## CONCLUSION

For the reasons stated above, Rosario's petition is GRANTED in part and DENIED in part. By **August 3, 2021**, Respondents shall cause Rosario to appear before an immigration judge for an individualized bond hearing. At the hearing, Respondents shall bear the burden of demonstrating, by clear and convincing evidence, that he is a danger to the community or a flight risk. Should Respondents fail to afford Rosario a bond hearing by **August 3, 2021**, Respondents shall release him immediately.

The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: July 20, 2021
New York, New York

_____
ANALISA TORRES
United States District Judge